JOHN V. FARWELL & COMPANY, Appellant, v. LEVI H. MEYER & SOLOMON WOLFF, Respondents.

St. Louis Court of Appeals, December 8, 1896.

1. Chattel Mortgages: PROCEEDING TO DECLARE VOID AND FOR AC-COUNTING: PLEADING: EVIDENCE. In a proceeding, by a judgment creditor of defendant, to have certain chattel mortgages, executed by the latter to his codefendant, declared fraudulent and void, and the codefendant account to plaintiff for the proceeds realized from such mortgages, where there was nothing in the petition charging the code-fendant as partner of defendant, but evidence was introduced upon the trial, by plaintiff, tending to show that fact, such evidence being competent to show the influence of the codefendant over defendant who was dependent on him, was relevant to the question of fraud in the mortgages, and no amendment of the petition was necessary to entitle it to consideration by the court.

2. ———: ASSIGNMENT: AMENDMENT OF PETITION AFTER DECREE. In such proceeding where the prayer was to have the codefendant ac-count to plaintiff alone for the proceeds of the mortgages, claimed to have been fraudulent, it was not error for the court to refuse to permit plaintiff to amend his petition after decree, in order to show that the mortgages and an assignment for the benefit of defendant's creditors, were part of one transaction, and that therefore the prefer-ence attempted to be given by the mortgages was in contravention of the assignment laws of the state.

3. **Mortgages to Secure Bona Fide Debt, But for Further Purpose of Hindering and Delaying Other Creditors:** EVIDENCE. Even though the mortgages in question were given to secure a *bona fide* debt, yet if the further purpose of the mortgagor and mortgagee was to hinder and delay other creditors of the mortgagor in the collection of their just claims, the mortgages were fraudulent as to such creditors; and where there was direct testimony showing such purpose on the part of the mortgagor and mortgagee, and that it would have been consummated, but for the action of the attaching creditors, the court should have considered such testimony.

4. **Testimony of Witness Impeached as to General Reputation for Veracity.** It was error to disregard the testimony of a witness impeached as to his general reputation for veracity. Such evidence must be weighed in connection with surrounding circumstances, to determine to what extent the witness should be credited.

5. **Relationship of Parties to Transaction:** INADEQUACY OF CONSIDERATION: EVIDENCE. The mere fact of the close family connection of parties to a similar transaction is not of itself sufficient to avoid it for fraud; nor is inadequacy of consideration sufficient for that purpose, unless very gross. But the two together furnish sufficient evidence of fraud to require the party claiming under the transaction to show fully and clearly its good faith.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, JUDGE.

REVERSED AND REMANDED.

*J. Hugo Grimm* for appellant.

Under the facts of this case a proceeding in equity to declare the mortgages void and for an accounting was proper. *Larrabee v. Bank*, 114 Mo. 594. See, also, *St. Louis v. Lumber Co., Id.* 74.

The fraudulent acts of Meyer having been shown, it was incumbent upon Wolff to establish, by competent evidence, the consideration of the mortgages given him. Bump on Fraud. Conv., p. 55.

Fraud was clearly shown, and the circumstances show clearly that Wolff was a party to it. Ordinarily, fraud can be proven only by circumstantial evidence.

Cooley on Torts, p. 475; *Hopkins v. Sievert*, 58 Mo. 201; *Borgert v. Borchert*, 59 *Id.* 80; *Massey v. Young*, 73 *Id.* 260.

The close relationship existing between Wolff and Meyer, and the fact that Wolff secured the whole property for his debt, which was worth about twice the amount of the debt, raises a strong presumption of fraud. *Stern v. Mason*, 16 Mo. App. 477; Bump. on Fraud. Conv., p. 55.

The court should have granted leave to plaintiff to amend its petition to conform to the facts proven, especially when the only objection came from the court, and not until it decided the case. *Blair v. Railroad*, 89 Mo. 383.

*Sturdevant & Stear* for respondents.

Plaintiff can not allege one state of facts and recover upon another. *Link v. Vaugh*, 17 Mo. 585; *Gurley v. Mo. Pac. R'y Co.*, 93 *Id.* 445; *Price v. Chicago, etc., R'y Co.*, 40 Mo. App. 189; *Smith v. Schell*, 82 Mo. 215; *Summer v. Rogers*, 90 *Id.* 324; *Reed v. Bott*, 100 *Id.* 62; *Whipple v. Peter Cooper*, 55 Mo. App. 554.

Plaintiff had no right to amend its petition after final decree. R. S. 1889, sec. 2098.

Fraud must be proved; it is never presumed. *Gordon v. Ismay*, 55 Mo. App. 323. See, also, *Peters Miller Shoe Co. v. Casebeer*, 53 Mo. App. 640; *Priest v. Way*, 87 Mo. 16; *Rumbolds v. Parr*, 51 *Id.* 592; *Henderson v. Henderson*, 55 *Id.* 534; *Ames v. Gilmore*, 59 *Id.* 537; *Chapman v. McIlwrath*, 77 Mo. 38.

Relationship between the parties to a conveyance is not sufficient to establish a fraudulent intent as to creditors, nor is the insolvency of the grantor alone sufficient, but the two together, added to other suspicious circumstances, may often furnish satisfactory proof of

such intent.   *Ranney v. Williams*, 89 Mo. 139; *Crow v. Andrews*, 24 Mo. App. 160; *Robinson v. Dryden*, 118 Mo. 534.

ROMBAUER, P. J.—This is a proceeding by a judgment creditor of defendant Meyer to have certain mortgages executed by the latter to his codefendant Wolff, to be declared fraudulent and void, and to have Wolff account to plaintiff for the proceeds he realized from such mortgages.   The court upon a full hearing on the merits dismissed the bill and rendered judgment for defendants.   The plaintiff appeals and complains that the court erred in not rendering a decree in its favor, claiming that it was entitled to such decree upon the weight of the evidence.   The plaintiff also complains that the court treated his petition as presenting the sole issue of fraud against creditors in the execution of said mortgages, although his petition presented the further issue that such mortgages being executed cotemporaneously with a general assignment were executed for the purpose of evading the statutes of the state of Missouri forbidding preferences in deeds of assignment for the benefit of creditors.   Plaintiff also complains that the court refused to it leave to amend its petition after decree rendered, so as to conform to the evidence adduced in charging the defendant Wolff as a copartner of defendant Meyer, and so as to contain the further allegation that defendant Meyer was but a tool in the hands of Wolff, and that the whole scheme of executing the mortgages and assignment was in fact designed by defendant Wolff.   The court evidently took the view of the case, that the sole aim of the petition was to charge the defendant Wolff as a fraudulent mortgagee, and the first question for our consideration is whether the court erred in taking that view.

The allegations of plaintiff's petition which bear upon the question are as follows:

"And plaintiff states that it is informed and believes that in truth no consideration passed from defendant Wolff to defendant Meyer for said notes and chattel mortgages and that said notes and mortgages were given without any consideration whatever, and for an entirely inadequate consideration, and for the purpose of hindering, delaying, and defrauding the creditors of said Levi H. Meyer, and so far as there was any consideration for said chattel mortgages, if there was any consideration whatever therefor, for the purpose of evading the statutes of the state of Missouri forbidding preferences in deeds of assignment given for the benefit of creditors."

"And plaintiff states that defendant Wolff was at the time said notes and mortgages were given him, fully cognizant of the fact that they were given for the fraudulent purpose aforesaid, and participated in said purpose."

"Wherefore plaintiff prays the court to decree that the notes and mortgages given by defendant Meyer to defendant Wolff, as aforesaid, be null and void, and that defendant Wolff render a full, true, and perfect account of all sums he has realized from the sales of the property of defendant Meyer, taken by him as aforesaid; that said Wolff be required to apply so much of all the sums he has realized as may be necessary to satisfy the same to the satisfaction of the judgment held by plaintiff against defendant Meyer, and above referred to. And plaintiff prays for an injunction restraining defendant Wolff from paying any portion of the amount realized from the aforesaid sale to defendant Meyer, until the judgment of plaintiff against said Meyer be fully realized, and for such other and further relief as equity and the nature of the case may require."

It will be seen that there is nothing in plaintiff's petition charging the defendant Wolff as a partner of defendant Meyer. Some evidence was introduced upon the trial by plaintiff having a tendency to show that fact, but as this evidence was competent for showing the influence of Wolff over Meyer, who was his son-in-law and greatly dependent on him, the evidence was relevant to the question of fraud in the mortgages, and no amendment of the petition was requisite to entitle it to consideration by the court. There is nothing in the record indicating that the court did not fully consider it, except the memorandum of the court's opinion, which although printed as part of the abstract, forms no part of the record. But whether the court considered it or not, it is not excluded from our consideration, and we have considered it in reaching our conclusions. We see no just ground of complaint which the plaintiff has on that score.

Nor is the plaintiff's complaint just, that the court erred in not permitting him to amend his petition after decree, so as to show that the mortgages and assignment were part of one transaction, and hence the preference attempted to be given by the mortgages was in contravention of the assignment laws of the state. The petition is drawn on no such theory. Had it been, the assignee would have been a necessary party, and the prayer should have been to declare the assignment, and let the plaintiff share in its results *pro rata*, and not as the prayer is, to have Wolff account to the plaintiff alone for the proceeds of the mortgages, which are claimed to have been fraudulent.

The record is very voluminous (covering one hundred and ninety pages of printed matter) and setting out the testimony in detail would extend this opinion far beyond the legitimate limits of such a paper. The court upon the hearing seems to have been of the

opinion that the main question for its consideration
was whether the mortgages given to Wolff were sup-
ported by an adequate consideration,—that is to say,
whether Wolff's claim against Meyer was *bona fide* to
the extent stated in said mortgages, and whether Wolff
took such mortgages for the purpose of securing said
claim. The court seemed to have given but secondary
consideration to the main proposition involved, that
although the mortgages were given to secure a *bona fide*
.debt, yet if the additional purpose on part of the
mortgagor and mortgagee was to hinder, delay, and
embarrass other creditors of the mortgagor in the col-
lection of their just claims, the mortgages as to such
creditors were fraudulent. It is well settled in this
state that even a general assignment for the benefit of
all creditors, which is deemed to be a conveyance for
full consideration, may be avoided by any of such
creditors if made with the intent to hinder and delay
the collection of their claims. *State to use v. Benoist*,
37 Mo. 500; *Crow v. Beardsley*; 68 Mo. 435.

We have analyzed the evidence as thoroughly as
our limited time will permit. The testimony bearing
on the question may be summarized as follows: Meyer
was a former partner of the defendant Wolff in a store
in Rich Hill, Missouri. He was also his son-in-law, and
as far as the evidence shows was wholly dependent on
him. He appears to have been almost wholly under
the influence of Wolff, who according to the testimony
of *disinterested* and *unimpeached* witnesses, dealt with
the store after the dissolution of the firm, in a manner
seemingly exercising complete control over it. That
Meyer in course of time became indebted to his father-
in-law appears by all the testimony, but the amount of
that indebtedness is shown by neither vouchers, notes,
nor book accounts, and no satisfactory evidence is
adduced upon the trial why written evidence of some

sort of such indebtedness is not produced.   Nor is the
evidence satisfactory at what time such indebtedness,
even as far as shown, did accrue.   This being the con-
dition of affairs the defendant Wolff with his attorney
called upon the defendant Meyer on the sixth day of
June, 1896, with four instruments previously prepared,
and prepared as far as the evidence discloses without
any previous consultation with Meyer, and caused the
latter to execute such instruments.   One of them is a
chattel mortgage on the goods to secure a bank in Rich
Hill for a loan recently made to Meyer upon the
indorsement of Wolff, the other two are chattel mort-
gages on the same goods to defendant Wolff to secure
an indebtedness to him of $5,000 and the last is a deed
of general assignment for the benefit of Meyer's cred-
itors.   The weight of the evidence shows that the
goods thus transferred were of an invoice wholesale
value of from $12,000 to $14,000, or about twice the
value of the amount of the mortgages.   The instru-
ments are recorded in the order above given.   The
defendant Wolff takes possession of the store under his
mortgages.   The former owner Meyer immediately
departs and is not afterward heard from in connection
with the store.   The assignee is not notified before-
hand, and is also not heard from ever afterward.   It is
further in evidence that the defendant Meyer shortly
before this failure contracted a heavy indebtedness for
merchandise, upon fraudulent representation as to his
indebtedness.   Some of these creditors attach the
goods, and Wolff settles the attachments at heavy dis-
counts.   The goods are finally closed out under the
mortgages, and are at the solicitation of Wolff bought
in by some St. Louis merchants, friends of his, Wolff
loaning them some money for the purpose of facilitating
the purchase.   Another son-in-law of Wolff's who is
also a broken merchant, is immediately afterward put

in possession of the goods by these St. Louis merchants and disposes of them as he claims on their account. No books or vouchers of any kind are produced evidencing such accounting, but the testimony concedes that the residue of the goods is finally turned back to Wolff at fifty cents on the dollar, and is found in the possession of Meyer at Centralia, Missouri, a place several hundred miles from Rich Hill, where he sells them as agent of Wolff.

There was direct testimony in the case to the effect that the whole transaction was designed for the purpose of staving off Meyer's creditors, and that such purpose would have been consummated, but for the action of the attaching creditors. The court wholly disregarded this evidence, apparently because the witness who gave it was impeached as to his general reputation for veracity, and because it was improbable. The court seems to have lost sight of the legal proposition that the impeachment of a witness as to his general reputation for veracity, has no tendency to show that the witness *is incapable of speaking the truth.* Such evidence has to be weighed in connection with surrounding circumstances, for the purpose of determining to what extent the witness should be credited. So weighing it, we conclude that part of the facts related by the witness are probably true, while part of his evidence is probably a fabrication.

The mere fact of the close relationship or family connection of parties to a similar transaction is of itself insufficient to avoid it for fraud; nor will inadequacy of consideration do it, unless it is very gross. But the two together certainly furnish sufficient evidence of fraud to call upon the party claiming under the transaction to make a very full and clear showing of its good faith, which was not done in the case at bar. The record is hardly in a shape to enable us to make

a decree. The defendant may upon a retrial furnish satisfactory evidence to the court of the consideration he has paid for the mortgages, by book entries and vouchers. He has neither done so, nor has he furnished any satisfactory reason for the omission. The defendant may also by the testimony of Meyer, whose absence from the trial is wholly unaccounted for, furnish a full and satisfactory explanation of how these mortgages came to be executed, without any previous consultation with him, on the spur of the moment, so to speak.

On the record before us we do not feel warranted either to affirm the decree, or to reverse it and make a decree of our own. We therefore reverse the decree and remand the cause for a further hearing according to the views herein above indicated. So ordered. All the judges concur.